ENTERED
CLERK, U.S DISTRICT COURT
MAY -5 2005
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

FILED
CLERK US DISTRICT COURT
MAY -4 2005
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

FRIENDS OF MARTIN LUTHER KING JR./DREW MEDICAL CENTER, et al.,

Plaintiffs,

vs.

COUNTY OF LOS ANGELES, et al.,

Defendants.

Case No. CV 04-08891 FMC (PJWx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants' Motion to Dismiss and Strike Portions of the Second Amended Complaint (docket #67). The Court has read and considered the moving, opposition, and reply documents submitted in connection with this Motion.

The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for May 9, 2005, is removed from the Court's calendar.

For the reasons and in the manner set forth below, the Court grants in part and denies in part the Motion to Dismiss.

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d)



## I. Background[1]

### A. Nature of the Case

This action arises out of reductions in services at the Martin Luther King Jr./Drew Medical Center ("King/Drew") and the planned closure of its Trauma Center.

### B. Plaintiffs

Plaintiff Congress of Racial Equality of California ("CORE") is affiliated with a national civil rights organization of the same name. Its members in Los Angeles County are residents of South-Central Los Angeles, an area served by King/Drew Medical Center.[2]

Plaintiff Phineas Gleason has been treated as an inpatient at King/Drew and currently receives outpatient services there. He has no health insurance.[3]

### C. Defendants

The Defendants are the Los Angeles County Board of Supervisors ("the Board"), Los Angeles County Department of Health Services ("DHS"),

---

[1] The Court's previous Order, issued on March 8, 2005, sets forth more fully the background of the current action.

[2] The SAC sets forth the following allegations regarding CORE's membership that did not appear in the First Amended Complaint ("FAC"): "CORE's members are regularly treated at the trauma center and the emergency room and in all other portions of the King/Drew Medical Center. It is probable that not a month has gone by without a CORE member being treated in the trauma center." SAC ¶ 12. "The closure of the Trauma Center over the past months has — on information and belief — ... resulted in patients, including next-of-kin of members of Plaintiff CORE, dying." SAC ¶ 45.

[3] In the SAC, Gleason makes the additional allegation that he is indigent. SAC ¶ 18.

the DHS Director, Thomas Garthwaite, and the DHS Chief Operating Officer, Fred Leaf.

**D. Factual Allegations**

Los Angeles operates five hospitals, including King/Drew. These hospitals provide 50% of all trauma care provided to the residents of Los Angeles County.

King/Drew opened in 1972 to serve a previously medically underserved community. King/Drew serves a community that is approximately 60% Latino, 35% African-American, 3% White, and 1% Asian. Over one-third of the individuals in its service area are children.

Until recently, King/Drew operated a Level One trauma center that treated patients for whom time is of the essence — i.e., those with gunshot wounds and knife wounds, as well as other severe injuries incurred as a result of penetrating and blunt trauma.

After the County was prohibited by Court order from closing Rancho Los Amigos and from reducing services at County-USC, the County laid off or transferred over four hundred employees of King/Drew. The County implemented the reductions without prior notice or hearing. Staffing at King/Drew has also been reduced due to attrition.

On September 7 and 13, 2004, the Board, in a closed-door session, voted to close the Trauma Center at King/Drew. The Board, in response to objections to the closed-door activities, subsequently announced that they would hold a public hearing. Board members stated publicly, however, that the decision to close the Trauma Center would not change.

### E. Plaintiffs' Claims

Plaintiffs' first claim is based on an alleged violation of Cal. Welfare & Institutions Code § 17000. Specifically, Plaintiffs allege that Defendants' reductions in services at King/Drew, as well as their plan to close the Trauma Center, violate their obligation to "relieve and support" the poor, by reducing county services to a level that denies Plaintiffs and other county indigent residents access to medically necessary medical care.

Plaintiffs' second claim is based on an alleged violation of Cal. Welfare & Institutions Code § 10000. Specifically, Plaintiffs allege that Defendants' actions have caused and will cause Plaintiffs and other county indigent residents to suffer inhumane and untimely medical treatment, resulting in preventable pain, illness, disability, and death.

Plaintiffs' third claim is based on an alleged violation of California Welfare & Institutions Code § 17001. Specifically, Plaintiffs allege that Defendants have adopted standards of health for the indigent and dependent poor of the county which do not comply with §§ 10000 and § 17000.

Plaintiffs' fourth claim is based on an alleged violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. Specifically, Plaintiffs allege that Defendants' actions "had a foreseeable and intentional discriminatory impact" on the protected class of Plaintiffs and members of the community served by King/Drew.

Plaintiffs' fifth claim is based on an alleged violation of the Equal Protection Clause of the United States Constitution. Specifically, Plaintiffs allege that Defendants, acting under color of state law, intentionally discriminated against Plaintiffs and the community served by King/Drew on account of race.

4

Plaintiffs' sixth claim is based on 42 U.S.C. § 1983, which provides a federal civil cause of action for constitutional injuries by state actors.

Plaintiffs' seventh claim is based on an alleged violation of the California Brown Act, Cal. Gov't Code § 54950. Specifically, Plaintiffs allege that the Board met in closed session on September 7 and 13, 2004, during which meetings, they voted to close the Trauma Center. Plaintiffs allege that those meetings and decisions violated the Brown Act, which they contend requires that actions taken by a public body be debated and voted on in a public forum.

### III. Standards for Dismissal
**A.   Motions to Dismiss Pursuant to Rule 12(b)(6)**

The present Motion to Dismiss requires the Court to determine whether the First Amended Complaint ("FAC") states claims upon which relief may be granted. *See* Fed R. Civ. P. 12(b)(6). The Court will not dismiss the claims unless Plaintiffs cannot prove any set of facts in support of the claims that would entitle them to relief. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998). In limiting its inquiry to the content of the FAC, the Court must take the allegations of material fact as true and construe them in the light most favorable to the Plaintiffs. *See Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir. 1985). Additionally, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994).

### B. Motions to Dismiss for Lack of Subject-Matter Jurisdiction

Defendants move to dismiss for lack of standing. Claims that are dismissed for lack of standing are dismissed for lack of subject-matter jurisdiction. A motion to dismiss an action for lack of subject matter jurisdiction is properly brought under Fed. R. Civ. P. 12(b)(1). The objection presented by this motion is that the court has no authority to hear and decide the case. When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988). The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction. See *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

### C. Motions to Strike

Federal Rule of Civil Procedure 12(f) permits the Court to strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Motions to strike are generally disfavored, and are appropriate only when the movant can show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants. *See* 2 Moore's Fed. Prac. at § 12.37[1], [3].

## IV. Associational Standing to Challenge the Closure of the Trauma Center

In the previous dismissal Order, the Court discussed a "fundamental flaw" that it perceived in Plaintiffs' challenge to the closure of the Trauma Center — that Plaintiffs would be unable to establish standing because the need for Trauma Center Services would always be speculative. As part of the minimum showing required to establish standing, a plaintiff must show it suffered an "injury in fact," which is an "invasion of a legally protected interest," and that such injury is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Court noted that the injuries treated at the Trauma Center are very severe, and very specific, and that by their very nature, the need for the services provided at the Trauma Center is sudden and unpredictable. Based on this, the Court dismissed with prejudice Plaintiffs' claims to the extent those claims were based on the closure of the Trauma Center.

At oral argument, Plaintiffs requested leave to amend to attempt to establish that CORE has associational standing to bring those claims. An association has standing, in a representational capacity, to assert claims on behalf of its members if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 798 (9th Cir. 2001) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434 (1977)).

In response, CORE has set forth allegations regarding the possibility that its members could have standing to sue in their own right. *See supra* note 2. CORE does make allegations that its members are "regularly treated at the trauma center and the emergency room and in all other portions of the King/Drew Medical Center. It is probable that not a month has gone by without a CORE member being treated in the trauma center." SAC ¶ 12.

CORE also alleges that"[t]he closure of the Trauma Center over the past months has . . . resulted in patients, including next-of-kin of members of Plaintiff CORE, dying." SAC ¶ 45.

The SAC also sets forth new allegations regarding the effects of the closure of the Trauma Center as well. "The closure of the trauma department has [caused] "curb-side-drop-off" trauma patients to be operated on in the emergency department," which further exacerbates already existing overcrowding in the emergency department. SAC ¶ 67. The SAC alleges that the "overcrowding has reached a crisis stage," which has led to repeated recommendations that the emergency department be closed. *Id.* This overcrowding, it is alleged, "puts patients at risk" and has significantly increased the wait time in the emergency department. SAC ¶¶ 67-68.

In its previous Order, the Court suggested that it would be less burdensome for a plaintiff, particularly an associational plaintiff like CORE, to establish standing to challenge reductions in services in the emergency department or the hospital in general, than it would be to challenge the closure of the Trauma Center. When the Court expressed its doubt as to the possibility that a plaintiff could establish standing, it had not considered the cascading effects of such closure on the emergency department in general. Therefore, to the extent that the closure of the Trauma Center has

significantly overtaxed the resources of the emergency department, CORE may challenge the closure pursuant to Cal. Wel. & Institutions Code.

### V. Welfare & Institutions Code Violations

Defendants argue the individual Plaintiffs lack standing to pursue their Welfare & Institutions Code Violations, the first, second, and third causes of action. The Court previously held that the individual Plaintiffs lacked standing because they failed to allege that they were indigent. In the SAC, Plaintiff Gleason[4] has alleged that he is indigent.[5] For this reason, Gleason has standing to assert the claims based on violations of the Welfare & Institutions Code.

Plaintiff CORE has attempted to establish associational standing by alleging that its members include those who reside in the area served by King/Drew and that its members "include persons who are incompetent, poor, indigent persons, and those incapacitated by age[,] disease, or accident." SAC ¶ 12. An association has standing, in a representational capacity, to assert claims on behalf of its members if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 798 (9th Cir. 2001) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434 (1977)). With these additional

---

[4] Gleason is the only individual Plaintiff to allege that he is indigent.

[5] The Court declines to impose upon Plaintiffs the additional obligation that they also allege that they are not supported or relieved by friends or relatives.

allegations, Plaintiff CORE has also established standing to assert the claims based on violations of the Welfare & Institutions Code.

The first, second, and third causes of action are dismissed with prejudice as to all Plaintiffs except Gleason and CORE. The Motion to Dismiss is denied with respect to Gleason and CORE as to the first, second, and third causes of action.

## VI. Title VI Claim

The Court previously dismissed without prejudice Plaintiffs' Title VI claim because it failed to allege that the actions taken by the Board were unlawful. As the Court's dismissal Order explained, allegations that the challenged action had a discriminatory impact is not sufficient to state a claim under Title VI. The Court noted that where the challenged governmental policy is, as here, facially neutral, "disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (internal quotation marks and citation omitted). In other words, Plaintiffs must allege that the Defendants' actions were "motivated by discriminatory animus." *Id.* They must have acted with "discriminatory purpose," a term that "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part *because of*, not merely *in spite of* its adverse effects upon an identifiable group." *Id.* (internal quotation marks and citations omitted; emphasis added).

The Court held that Plaintiff's allegations with respect to the Title VI

10

claim to be insufficient in light of this standard.[6] Notwithstanding this holding, Plaintiffs have not amended the factual allegations upon which their Title VI claim is based. Therefore, the Court dismisses with prejudice the fourth cause of action as to all Plaintiffs.

## VII. Motion to Strike

Defendants argue that, in the event that the Court does not dismiss the first through third causes of action, the Court should strike certain provisions of the prayer for relief with respect to these claims. Because the Court denied the Motion to Dismiss these claims as to two Plaintiffs, the Court considers the Motion to Strike.

Defendants move to strike as moot a request that the closure of the Trauma Center be enjoined. The Court grants this request.

Defendants also move to strike a prayer for injunctive relief that seeks an order restoring medical services to the June 2003 level, and a prayer to injunctive relief that requests that the County be enjoined from making any further reductions to Los Angeles County medical services. Defendants argue that this remedy is not recoverable as a matter of law.

Under Cal. Wel. & Inst. Code § 17000, counties are required to provide "medically necessary care" to the indigent. At the pleadings stage, the Court cannot say that the portions of Plaintiffs' prayer for relief are beyond the scope of the available remedies under §17000. Accordingly, the remainder of the Motion to Strike is denied.

---

[6] In contrast, the Court held that the allegations made in connection with Plaintiffs' equal protection claim did meet this standard and, applying the same standard, denied a motion to dismiss the equal protection claim.

11

## VIII. Conclusion

The Motion to Dismiss is granted in part and denied in part. The first, second, and third causes of action are dismissed with prejudice as to all Plaintiffs except Plaintiff Gleason and CORE. The Court dismisses with prejudice the fourth cause of action as to all Plaintiffs. The remainder of the Motion to Dismiss, including CORE's standing to challenge the closure of the Trauma Center (directed toward the fifth and sixth causes of action), is denied.

The Motion to Strike is granted in part and denied in part. The Motion is granted as to the prayer for relief seeking an injunction prohibiting the closure of the Trauma Center; such prayer is moot. The remainder of the Motion is denied.

Dated: May 4, 2005

FLORENCE-MARIE COOPER, Judge
UNITED STATES DISTRICT COURT